IN THE UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DAVIS, | ) | CASE NO. 1:23-CV-00347 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Plaintiff, Christopher Davis ("Davis"), challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Davis filed an application for DIB on November 9, 2020, alleging disability since October 6, 2017.[1] ((Transcript ("Tr.") at 212) He claimed disability due to chronic kidney failure, high blood pressure, blackouts, anxiety, low heart rate, severe migraines, and depression. (Tr. 230) His applications were denied initially and upon reconsideration, and Davis requested a hearing before an administrative law judge ("ALJ"). (Tr. 116, 130, 165-67)

---

[1] Davis also previously filed applications for SSDI and SSI benefits that were denied at the ALJ level on June 17, 2020. (Tr. 15) Thus, the relevant period in the instant matter is June 18, 2020, to present. (Tr. 17)

1

On March 9, 2022, ALJ Matthew Winfrey held a telephonic hearing on Davis' application. (Tr. 52-83) Davis, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) On April, 12, 2022, the ALJ issued a written decision finding Davis was not disabled. (Tr. 10-51) The decision became final on January 17, 2023, when the Appeals Council declined further review. (Tr. 1-3). Davis then filed the instant Complaint challenging the Commissioner's final decision. (Doc. No. 1) The parties have completed briefing in this case. (Doc. Nos. 8, 11) In his brief, Davis asserts the following assignment of error:

> 1. Did the Administrative Law Judge ("ALJ") commit reversible error by failing to evaluate the Plaintiff's statements regarding the intensity, persistence, and pace of his symptoms?

(Doc. No. 8 at 1).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Davis was born in 1989, making him a "younger individual age 18-49" under the regulations. (Tr. 44) *See* 20 C.F.R. § 404.2563. He has at least a high school education. (*Id.*)

### B. Relevant Medical Evidence

<u>Kidney Disease.</u> Davis has a history of chronic kidney disease and underwent a renal transplant in 2001 at the age of 12. (Tr. 307) In March 2019, he reported that he took transplant medication until he was 18, at which time he stopped taking the medication due to insurance issues. (*Id.*) He denied urinary frequency at that visit. (*Id.*) Davis' creatinine levels were well below, and his albumin and estimated glomerular filtration rate levels well above, Listing level severity throughout the relevant period. (Tr. 581-82, 635, 697, 795, 1049, 1053, 1058-59, 1065-66, 1073-74, 1092-93, 1103-04.)

A July 2021 CT scan documented normal appearance of the renal transplant and markedly atrophic and hydronephrotic native kidneys. (Tr. 630) It was noted that the results were unchanged

since a March 2018 scan. (*Id.*) It was also noted at the time he was awaiting a transplant evaluation. (Tr. 694) In August 2021, nephrologist Nhan Luu, M.D., opined that Davis would need a new transplant at some unknown point in the future. (Tr. 673) Davis endorsed anemia and backpain, but not urinary changes. (*Id.*) In September 2021, Davis' physical therapist noted that he may look into some part time work but needed to take into consideration his kidney issues and bathroom breaks. (Tr. 774). On several occasions, Davis endorsed enuresis.[2] (Tr. 660, 688, 693, 951) However, Davis also had many unremarkable genitourinary[3] examinations and denied frequent urination at times. (Tr. 574-75, 593, 610, 643, 705, 785, 847, 849, 1035, 1038, 1090, 1118, 1134)

<u>Back Pain</u>. Davis also received treatment for low back pain stemming from a 2006 motor vehicle accident. (Tr. 743) At a February 2021 consultative examination Davis demonstrated full range of motion and strength throughout, no problems getting on and off the examination table unassisted, no incoordination at that time, and full strength and normal range of motion in his arms and legs with normal bulk, sensation, and tone. (Tr. 552-60) June 2021 x-rays of Davis' lower back showed minor spurring and degenerative changes but well-maintained vertebral body heights and no significant disc space narrowing, spondylolysis, or disc slippage. (Tr. 595-96)

On July 20, 2021, Davis reported that his pain was increased with bending, lifting, inactivity, and walking; and was relieved by lying down. (Tr. 660). His physician documented moderate difficulty transitioning from sitting to standing and an antalgic gait. (Tr. 664). He was prescribed duloxetine and baclofen and given a referral to aqua therapy. (Tr. 665). He told his physical therapist that he had sleep disturbances due to low back pain, requiring him to change positions often. (Tr.

---

[2] Enuresis: urinary incontinence. https://www.hopkinsmedicine.org/health/conditions-and-diseases/bedwetting-enuresis.
[3] Genitourinary: "relating to the genital and urinary organs or functions." https://www.merriam-webster.com/dictionary/genitourinary

3

679). He denied pain at the visit and reported 0/10 pain after treatment. (*Id.*) Davis was evaluated by David Fitch, D.O., an orthopedic surgeon, on August 18, 2021. (Tr. 743) Dr. Fitch reviewed an x-ray that demonstrated mild disk thinning and noted that Davis had been engaging in physical therapy ("PT") for 3 weeks, which was helpful. (*Id.*) Accordingly, Dr. Fitch recommended Davis continue PT and medication management. (*Id.*) Davis reported 2/10 back pain in September 2021 and 1/10 back pain in October 2021 and February 2022. (Tr. 785, 847, 1118) In February 2021, Davis denied back and neck pain and had full spinal range of motion and strength. (Tr. 552-60)

Mental Health. Davis has been diagnosed with major depressive disorder and unspecified anxiety disorder. (Tr. 567). He reported symptoms of depression such as lack of motivation, low energy, poor eating habits, troubled relationships, sleep abnormalities, and job instability. (Tr. 562). He stated that he felt uncomfortable in stores and driving at night. (Tr. 567). At a December 2020 psychological consultative examination, Davis complained of panic attacks in public, but denied any history of inpatient psychiatric treatment or any taking psychotropic medication. (Tr. 546) On several occasions, Davis had normal mental status examination results with no anxiety or depression noted. (Tr. 575, 593, 610, 705, 980, 1134)

**C.     Opinion Evidence**

**John Reese, Psy.D.** In December 2020, consultative psychologist John Reece, Psy.D., diagnosed panic disorder with agora phobia. (Tr. 548-49) Dr. Reese did not set forth any specific functional limitations due to Davis' mental impairments, but stated Davis has a "deficit in dealing with stress and pressures in the workplace" due to anxiety. (Tr. 548-49)

**State Agency Opinions:** In December 2020, state agency reviewing psychologist Cynthia Waggoner, Psy.D., found that Davis had moderate limitations in all four areas of psychological functioning; could perform on to three step tasks that did not require extended periods of close

4

attention to detail; tasks in an environment with occasional public, supervisory, and coworker contact; and tasks in a relatively static environment with changes explained. (Tr. 109, 112-13, 122)

In March 2021, state agency reviewing physician Abraham Mikalov, M.D., adopted the residual functional capacity (RFC) findings from Davis's previous disability denial. Accordingly, he found Davis could perform a full range of work at all exertional levels but could not climb ladders, ropes, or scaffolds; could frequently stoop, kneel, crouch, and crawl; and could not work around hazards. (Tr. 111)

In August 2021, state agency reviewing psychologist Courtney Zeune, Psy.D., affirmed the findings of Dr. Waggoner. (Tr. 126-28) That same month, state agency reviewing physician Lynne Torello, M.D., affirmed Dr. Mikalov's findings. (Tr. 126)

**Robert Guinsler, D.O.** In February 2021, Davis had one visit with Dr. Guinsler who opined that Davis could walk for approximately four hours in an eight-hour workday, be on his feet for combined total of five hours in a workday, could carry less than 30-40 pounds frequently and more than 35-45 pounds occasionally, and had no postural or manipulative limitations. (Tr. 560)

**C.     Hearing Testimony**

On March 9, 2022, Davis, represented by counsel, appeared for a telephonic hearing before the ALJ. (Tr. 52-83) Davis testified to the following:

- He lives with his mother and girlfriend in a home with stairs. He has a driver's license and has no problems driving. At the time of the hearing, he was working at Little Caesar's 4-5 days a week in food prep, cooking, and customer service. But had lowered his hours per day from 7 to 3-4 due to his seizures. He could lift about 35 pounds. He stated that he previously worked at Speedway in September 2021, but was fired after the background check came back. He also worked for Amazon for three months in 2017 as a picker.

- He stated he is unable work due to his back issue and that he is "off-task about 25% of the time," due to frequent bathroom usage and having to go "cool down" after getting overheated. He stated he used the bathroom about 10 times a day.

5

- The ALJ asked Davis about his sleep. Davis stated he got 6-8 hours a night, but felt fatigued due to his anti-seizure and pain medications. In response to ALJ questioning, Davis also stated he went grocery shopping once a week though he would get anxiety and, if standing too long, back pain. He stated that he was not in counseling but that about twice a week he experienced panic attacks that made him feel hot and breath heavy, which are triggered by stress, arguing, and major changes. He stated he uses the steps slowly with a railing and did not need help with personal care, but had to sit down sometimes to dress due to balance issues. He stated he could comfortably lift about 15-20 pounds and could walk about a mile. He also stated he could stand a few hours before needing a break.

- Davis testified that in a typical day he spent time with his girlfriend talking or watching TV, go to work, pick up his girlfriend from her job which usually involves waiting for an hour. He also stated that he cooks, washes dishes, and does laundry once a week.

- With regard to treatment, Davis stated that he took pain medication for his back. He also stated that he used marijuana to help ease pain and stress. He last had a seizure on February 5th at work triggered by heat. He said before that he had a seizure on Memorial Day triggered by heat and dehydration.

- During an examination from his counsel, Davis further testified that he had trouble at night due to headaches from headlights and could not drive for an hour without stopping 2-3 times to stretch his back. He also stated he would have to get up the same amount if sitting in a chair. He reported daily back pain from standing too long or heavy lifting. Davis also stated he had trouble being around crowds since he got out of prison. Davis stated he must lie down for about half the day, when he is not getting up to use the rest room, working, or running errands. He also experienced frequent headaches not alleviated by medication due to stress.

(Tr. 58-75)

Vocational Expert ("VE") George Coleman also testified at the hearing. (Tr. 75-81) The ALJ posed various hypothetical scenarios to the VE about whether an individual of Davis's age, education, and work experience could work and, if so, what types of jobs could they perform with the following theoretical limitations:

1. Light work, except he could never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs, occasionally stoop, kneel, crouch, and crawl; no exposure to work place hazards such as unprotected height, moving mechanical parts, and operation of motor vehicles; can perform simple, routine, and repetitive, but not at a high-production rate paces such as assembly line work; and can tolerate occasional

    interactions with supervisors, co-workers, and the public, and can tolerate occasional changes in duties and the work setting. (Tr. 77)
- The VE stated that the hypothetical person could not perform Davis' past work, but could perform work as an officer helper, mailroom clerk, and cafeteria attendant. (Tr. 78).

2. The ALJ then adjusted hypothetical #1 so that the person was limited to standing or walking no more than four hours in a workday. (*Id.*)
   - The VE testified that the individual in hypothetical #2 could still perform work as an officer helper and clerical assistant and could also perform work as a routing clerk. (Tr.78-79)

3. The ALJ then asked what would happen if the hypothetical individual were off-task 5% of the time during the workday due to pain, the need to change positions, and other symptoms. (Tr. 79-80)
   - The VE responded that, in his experience, going above 10% off-task time in an eight-hour work day would be work preclusive. (Tr. 80) The VE also testified that there would be no work if an individual had to lay down 2 hours in an 8-hour workday. (Tr 80)

### III. STANDARD FOR DISABILITY

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work

experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022. (Exhibit B5D/1).

2. Based on the totality of the evidence, the claimant did not engage in SGA from October 6, 2017, the alleged onset date of disability, through October 7, 2017, the day prior to the first date adjudicated by the prior ALJ decision, and from June 18, 2020, the day after the date of the prior ALJ decision, through the date of this decision (20 CFR 404.1571 et seq.).

3. Based on the objective medical evidence, the claimant has no severe medically determinable impairment or combination of impairments from October 6, 2017, the alleged onset date of disability, through October 7, 2017, the

4. Based on the objective medical evidence, the claimant has the following severe combination of impairments as of June 18, 2020, the day after the date of the prior ALJ decision: degenerative changes of the lumbar spine, seizure disorder, chronic kidney disease ("CKD"), obesity, anemia, and depressive and anxiety disorders (20 CFR 404.1520(c)).

5. Based on the objective medical evidence, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the criteria of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 as of June 18, 2020 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. After careful consideration of the entire record, it is determined that as of June 18, 2020, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He can stand and/or walk for up to four hours during the work duty day. Climbing ramps and stairs, crawling, crouching, kneeling, and stooping, are each limited to no more than occasionally. He cannot climb ladders, ropes, and scaffolds, and engage in occupational driving, and must avoid all

|   |   |
|---|---|
|   | exposure to extreme heat and workplace hazards such as unprotected heights or dangerous, moving, mechanical parts. Mentally, the claimant retains the capacity to perform simple, routine, repetitive tasks with no production rate pace such as one has with assembly line work. He can tolerate occasional changes in work duties and setting. He can tolerate occasional interaction with co-workers, members of the general public, and supervisors. |
| 7. | Based on the claimant's residual functional capacity as of June 18, 2020, he cannot perform his past relevant work (20 CFR 404.1565). |
| 8. | The claimant was born on November 29, 1989, and he is defined as a younger individual age 18-49, at all times relevant herein (20 CFR 404.1563). |
| 9. | The claimant has a high school education (20 CRF 404.1564). |
| 10. | Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. (20 CFR 404.1568) |
| 11. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a). |
| 12. | Because the claimant has no severe medically determinable impairment or combination of impairments, he is not disabled as defined in the Social Security Act, from October 6, 2017, the alleged onset date of disability, through October 7, 2017, the day prior to the first date adjudicated by the prior ALJ decision (20 CFR 404.1520(c)). |
| 13. | Because jobs exist in significant numbers in the national economy that the claimant can perform, he is not disabled as defined in the Social Security Act from June 18, 2020, the day after the date of the prior ALJ decision, through the date of this decision (20 CFR 404.1520(g)). |

(Tr. 17-46)

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v.*

*Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v.Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also His v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial

evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

Davis puts forth one assignment of error in his brief. Davis argues that, in fashioning the RFC, the ALJ did not sufficiently address his subjective complaints. (Doc. No. 8 at 9-13)

### 1. Law

A social security disability claimant's RFC is an assessment of the most a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). In making this determination, the ALJ must consider all relevant evidence in the case record. *Id.;* Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *5. This evidence includes medical records, opinions of treating physicians, and the claimant's own description of his limitations. 20 C.F.R. § 404.1545(a)(3). Though an ALJ must consider all medical and non-medical evidence, "[t]he ALJ is charged with the responsibility of determining the RFC." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 719, 728 (6th Cir. 2013).

11

An ALJ "is only required to incorporate those limitations which he has deemed credible" and may reject limitations or impose more restrictions. *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir.2003) (citations omitted). Nevertheless, an ALJ's assessment of a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d 469 at 476.

2. **Analysis**

As noted earlier, the ALJ found that Davis retained the RFC to perform "light work" as denied in 20 CFR 404.1567(b) with the following limitations:

> He can stand and/or walk for up to four hours during the work duty day. Climbing ramps and stairs, crawling, crouching, kneeling, and stooping, are each limited to no more than occasionally. He cannot climb ladders, ropes, and scaffolds, and engage in occupational driving, and must avoid all exposure to extreme heat and workplace hazards such as unprotected heights or dangerous, moving, mechanical parts. Mentally, the claimant retains the capacity to perform simple, routine, repetitive tasks with no production rate pace such as one has with assembly line work. He can tolerate occasional changes in work duties and setting. He can tolerate occasional interaction with co-workers, members of the general public, and supervisors.

Davis argues that the ALJ provided an insufficient analysis of his "allegations of frequent urination, weekly panic attacks, or the need to lie down to relieve his pain." (Doc. No. 8, 10)

12

### A. Enuresis and Bathroom Breaks

Davis first asserts that the ALJ failed to sufficiently address his kidney related issues (enuresis and frequent bathroom breaks). (Doc. No. 8 at 10-11) The ALJ acknowledged Davis' allegations of "urinary frequency, dysuria, and heat intolerance attributable to his kidney conditions." (Tr. 32) Nonetheless, the ALJ found the evidence did not fully support Davis' allegations regarding the intensity, persistence, and limiting effects of these symptoms. Davis takes issue with the ALJ's finding that Davis had, "creatine levels below listing severity, albumin and glomerular filtration levels above listing severity, normal ultrasound findings, and normal ferritin, iron, and iron-binding levels. (Tr. 34)." (Doc. No. 8 at 10-11) Davis asserts that, "these objective findings are not inconsistent with the claimant's alleged bathroom use and enuresis." *Id.* However, Davis argument ignores the rest of the ALJ's opinion and, therefore, is not well-taken

The ALJ discussed Davis kidney issues throughout his opinion. For example, the ALJ stated:

> The claimant underwent kidney transplant in 2001 (Exhibit B7F/5), which is nearly 20 years prior to June 18, 2020. There is no evidence documenting dialysis as of June 18, 2020. The claimant has creatinine levels well below and albumin and estimated glomerular filtration rate levels well above Listing level severity (Exhibits B6F/13-14, B9F/8, B14F/23, B16F/11, B20F/8, 12, 17-18, 24-25, 32-33, 51- 52, and 62-63, and B24F/3, 5-6, 9, and 12-13). The claimant reported no longer treating for kidney failure including medication in March 2021 (Exhibit B5F/6). The claimant reported not taking anti-rejection medication for his kidney transplant for the past 13 years in June 2021 (Exhibit B7F/5). The claimant repeatedly had negative genitourinary examination results with no bladder incontinence and habit changes, hematuria, nocturia, and polyuria (Exhibits B4F/7, B6F/6-7, B7F/6 and 8, B8F/10, B10F/2, B11F/14, B14F/31, B16F/1, 63, and 65, B18F/2, B19F/7 and 10, B20F/49, B22F/1, and B23F/4). The claimant described his alleged dysuria as only intermittent in February 2021 (Exhibit B4F/7).

(Tr. 21, see also Tr. 34) The ALJ also noted that Davis had, "negative endocrinal examination results (Exhibits B7F/8, B8F/10)." (Tr. 35). And the ALJ relied on the fact that, "no acceptable

13

medical source under the Regulations credibly opined as to additional or greater physical functional limitations and restrictions." (Tr. 40)

The ALJ's decision must be read as a whole. Davis does not acknowledge or address the additional explanations provided by the ALJ. Davis also failed to respond the Commissioner's citations to the same, despite having the opportunity to do so. (Doc. No. 11 at 7-8) Thus, Davis does not dispute the ALJ's analysis of the medical record. Further, Davis has not argued that the ALJ failed to follow SSR 96-7p or otherwise challenge the ALJ's consistency/credibility determination. Davis fails to cite to any medical records in the argument section of his brief. (Doc. No. 8 at 10-11) Thus, Davis has not shown that the ALJ disregarded evidence. Even if there were some evidence in support of Davis' claimed limitations, the role of the Court here "is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

The ALJ's omission of increased bathroom breaks[4] in the RFC is supported by substantial evidence. First, no medical source opinion supported functional limitations related to Davis' kidneys or bathroom issues. (Tr. 39-42); *See Acosta v. Comm'r of Soc. Sec.*, No. 1:16CV1737, 2017 WL 2859800, at *9 (N.D. Ohio June 16, 2017), *report and recommendation adopted,* No. 1:16CV1737, 2017 WL 2840762 (N.D. Ohio July 3, 2017) (finding the ALJ's decision not to include frequent bathroom breaks in RFC supported by substantial evidence because claimant did not point to a "medical opinion stating that she requires frequent bathroom breaks, or any evidence setting out any functional limitations or restrictions on this issue."); *see also Varitek v. Comm'r of Soc. Sec.,* No. 4:18-CV-1281, 2019 WL 2996471, at *14 (N.D. Ohio Apr. 23, 2019), report and recommendation adopted, No. 4:18-CV-1281, 2019 WL 2997055 (N.D. Ohio July 9, 2019) (finding

---

[4] Though Davis also includes enuresis in his argument, he does not state what limitation enuresis would require other than more frequent bathroom breaks.

the ALJ did not err in omitting urination frequency from RFC, in part, because claimant "did not produce any medical opinion evidence indicating that her frequent restroom usage caused any functional limitations.")

Second, the ALJ noted that objective examinations and testing regularly yielded normal results. *Owings v. Colvin*, 133 F. Supp. 3d 985, 1001 (M.D. Tenn. 2015) (finding the ALJ did not err by omitting frequent urination complaint from RFC where, other than claimant's subjective complaints, there was no objective evidence in the record to support his claim). "In the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability." *Hite v. Comm'r of Soc. Sec.*, No. 3:16 CV 1272, 2017 WL 4226842, at *3 (N.D. Ohio Sept. 22, 2017) "The ALJ need only include in the RFC those limitations that he or she accepts as credible." *Parrella v. Comm'r of Soc. Sec.,* No. 3:18-CV-116, 2019 WL 1970532, at *4 (S.D. Ohio May 3, 2019), *report and recommendation adopted*, No. 3:18-CV-116, 2019 WL 2177359 (S.D. Ohio May 20, 2019) (*citing Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993)). Here, Davis fails to point to any objective evidence (See Doc. No. 8 at 10-11) and the ALJ found his subjective statements were "inconsistent and unsupported." As the Sixth Circuit has explained, "an administrative law judge's credibility findings are virtually unchallengeable absent compelling reasons. *Shepard*, 705 Fed. Appx. at 442. Davis presents no such compelling reasons here.

Third, the ALJ considered that Davis was not seeking or undergoing treatment for the issue. (Tr. 21, 34); *Moore v. Comm'r of Soc. Sec*., 573 F. App'x 540, 543 (6th Cir. 2014) (finding claimant's "failure to pursue treatment greatly erodes her credibility.").

Based on the above, the ALJ's determination to accord less weight to Davis' subjective complaints related to his kidneys was sufficiently explained, supported by substantial evidence, and reasonable in light of the evidence presented.

**B. Anxiety**

Davis also argues that the ALJ's decision was insufficient in dealing with his anxiety issues. (Doc. No. 8 at 11) Davis notes that the ALJ reviewed his activities of daily living including his ability to tend to his personal needs, care for his pets, drive, manage finances, use a computer and email. (Tr. 36) Davis admits that the ALJ recounted a "host of normal mental status findings," Davis' denial of anxiety at the time of the consultative exam, and Davis' denial of interpersonal issues. (Doc. No. 8 at 11) Davis argues, however, that "the ALJ did not explain why those statements were contrary to [Davis'] allegations of panic attacks in public." (*Id.*) However, based on Davis' recitation of the ALJ's opinion, it is unclear what Davis thinks the ALJ's analysis is missing.

The ALJ found that Davis' testimony regarding his panic attacks was inconsistent with the objective evidence as Davis repeatedly had normal mental status examination results with no anxiety or depression noted. (Tr. 38 citing Tr. 575, 593, 610, 705, 980, 1036, 1134). The ALJ also considered Davis' lack of treatment. Although Davis alleged experiencing at least two panic attacks every week, the ALJ noted that Davis had no history of in-patient treatment, did not take medication, and did not engage in therapy to treat his panic attacks. (Tr. 30, 38, 66-67) Both SSA regulations and caselaw support an ALJ discounting a claimant's credibility for failure to treat. *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) (finding claimant's "failure to pursue treatment greatly erodes her credibility."); SSR 16-3p (stating ALJ may discounted credibility "if the individual fails to follow prescribed treatment that might improve symptoms."). Additionally, none of the medical sources opined as to any limitations or specific restrictions related to the reported panic

16

attacks.[5] The ALJ also found Davis' activities of daily living belied his claims. The ALJ noted Davis' extensive activities of daily living such as leaving his residence "multiple times a week," shopping in stores, running errands, driving, living with and maintaining good relationships with others, caring for his pets and his own personal needs. (Tr. 36-39) The Sixth Circuit has stated that the "ability to drive, prepare simple meals, shop, and go to eat or the movies…may be considered in making a credibility determination regarding a claimant's asserted limitations." *Shepard v. Comm'r of Soc. Sec.,* 705 F. App'x 435, 442 (6th Cir. 2017); *Masters v. Comm'r of Soc. Sec.,* 707 F. App'x 374, 379 (6th Cir. 2017) ("The ALJ reasonably noted that despite her symptoms, [Plaintiff] remains able to perform routine, daily tasks that he viewed as inconsistent with her allegations that her pain and symptoms were completely debilitating."); *Berry v. Comm'r of Soc. Sec.*, 289 F. App'x 54, 56 (6th Cir. 2008) (The Court found the ALJ's decision supported by substantial evidence including medical opinions and claimants, "ability to live independently and perform regular household activities belie[d] her claim that she is totally disabled"); *See also* 20 C.F.R. § 404. 1529(c)(3)(i) (listing a claimant's "daily activities" as a factor for consideration.)

As explained above, the ALJ determined that Davis' complaints of disabling panic attacks were inconsistent with objective medical evidence, lack of treatment, and activities of daily living. That determination is sufficiently explained, supported by substantial evidence, and reasonable in light of the evidence presented.

### C. Back Pain/Need to Lie Down

Finally, Davis argues that the ALJ's handling of his need to lie down due to back pain was insufficient. Davis testified that he must lie down every day for about "half the day" or more to relieve his backpain. (Tr. 74) At the hearing, Davis' counsel asked the VE whether a hypothetical

---

[5] Dr. Reece suggested that Davis' "anxiety was a deficit in dealing with stress and pressure," but did not opine as to any associated functional limitations. (Tr. 549)

individual could work if they needed to lie down for 2 hours in an 8-hour workday. (Tr. 80) The VE responded that a 2-hour lie down requirement was work preclusive. (*Id.*) Davis argues that the ALJ did not explain his reasons for rejecting the 2-hour lie down limitation.

    First, it is not clear that the ALJ wholly rejected Davis complaints, as he suggests. Neither Davis nor any medical source suggested that David needed to lie down for 2 hours in an 8-hour workday. Though Davis testified that he would lie down for "half the day" it is unclear if this could or was done at times outside the workday. For example, Davis also testified that he worked 7 hours a day at Little Caesar's, with his hours recently reduced to 3-4 hours a day due to his seizure issues. (Tr. 59-60) Davis did not testify that a need to lie down at work affected his job or his working hours. This is not evidence in support of the ALJ's RFC determination, rather the Court finds a recitation of the testimonial evidence is necessary to understand the origin of the claim in Davis' brief (i.e., where the suggestion that Davis needed to lie down for 2-hours came from). The contention that Davis needs to lie down for 2 hours in an 8-hour workday, only appears in the record as a hypothetical question Davis' counsel made to the VE. Davis cites no authority that requires the ALJ to address all hypothetical scenarios raised by his counsel, especially ones with unclear origin such as the 2-hour lie down limitation.

    Even if the Court were to find that Davis made an allegation that he needed to lie down for a two-hour period during the workday, the ALJ's failure to incorporate the allegation is supported by substantial evidence. The ALJ found that Davis' lumbar spinal issues constituted a severe impairment (Tr. 18) However, like with Davis' anxiety and kidney issues, the ALJ determined that Davis' allegations regarding the intensity, persistence, and limiting effects of Davis' back pain was inconsistent with the objective medical evidence, treatment, opinion evidence, and daily activities.

Regarding objective medical evidence, the ALJ cited diagnostic imaging results that failed to document nerve root compromise or impingement or lumbar stenosis. (Tr. 20 citing (Exhibits B7F/4 and 10-11, B8F/21, B9F/13-14, B16F/101, B18F/40, and B20F/26 and 36-37). The ALJ also highlighted numerous medical visits where Davis demonstrated normal range of motion and full strength. (Tr. 34, 35) The ALJ noted that at times Davis presented with antalgic gait but "in all cases" there were also "concurrent notations to normal gait." (Tr. 35) The ALJ also noted that Davis' February 2021 consultative examination was "entirely normal" with full strength and range of motion. (Tr. 35)

In addition to objective evidence, the ALJ found Davis' complaints to medical providers were also inconsistent with constant disabling back pain. For example, Davis reported 1/10 back pain in October 2021 and February 2022, and 2/10 back pain in September 2021. (Tr. 22, 34) The ALJ also noted that Davis denied back pain at visits in February and May 2021. (*Id.*)

The ALJ's decision also relied on medical opinions that failed to support greater limitations related to Davis' back pain. In particular, no physician provided an opinion that included a limitation to lie down during the workday. (Tr. 39-41, 111, 125, 560, 673, 1120) And the ALJ found that Davis back-related allegations were inconsistent with the "numerous strenuous [daily] activities and activities involving significant usage of the spine and lower and upper extremities" including driving, shopping, performing chores, working part-time, and "engaging in moderate to strenuous exercise once a week for 60 minutes at a time in July 2021." (Tr. 36) Finally, the ALJ noted Davis' conservative treatment for back pain (i.e. physical therapy). (Tr. 31)

Davis has not shown that the ALJ's discussion of his back related symptoms is insufficient. As noted above, Davis fails to point to any evidence justifying the argument that he "would need to lie down for a total of two hours in a duty day." (Doc. No. 8 at 12) Even if this

19

Court could find that Davis' hearing testimony supported such a limitation, the ALJ's decision to discount Davis' claims of disabling back pain is sufficiently explained, supported by substantial evidence, and reasonable in light of the evidence presented. While Davis's brief only focuses on the ALJ's references to objective testing, Davis ignores the additional rationale provided by the ALJ noted above.

## VI.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be **AFFIRMED.**

Date:  September 19, 2023

    *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**